# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Susan Rae Berkowitz,                                Civil No.: 06-934 (PAM/AJB)

                Petitioner,

vs.                                                 **REPORT AND RECOMMENDATION**

State of Minnesota,

                Respondent.

---

## I. Introduction

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petitioner's motion pursuant to 28 U.S.C. § 2254 for habeas corpus relief by a person in state custody.  The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).  Petitioner is confined at the Minnesota Correctional Facility in Shakopee pursuant to conviction and sentencing in Hennepin County District Court.  A jury convicted Petitioner of premeditated murder in the first degree and attempted murder in the first degree.  The trial court sentenced Petitioner to life in prison plus 184 months.

Petitioner now seeks relief under an application for writ of habeas corpus.  Petitioner asserts the following claims in this habeas corpus action:

(1) Petitioner's trial attorneys refused to let her testify;

(2) Petitioner's trial attorneys refused to remove the trial judge after learning that the trial judge's wife had previous contact with Petitioner regarding a probate matter;

(3) a *Miranda* warning was "superimposed" on a videotape of Petitioner's statements to the police;

(4) Petitioner's trial attorneys failed to present testimony of three other individuals

1

willing to testify as to how they were victimized by Richard Hendrickson;

(5) Prosecutors failed to disclose "extremely important documents" recovered during the execution of a search warrant at Petitioner's storage locker;

(6) Petitioner's trial attorneys knew about and did not seek to recover the documents the prosecutor failed to disclose;

(7) the trial transcript was altered;

(8) the trial judge erred in allowing Petitioner's videotaped statements to be played in "open court" during a pre-trial suppression hearing;

(9) the trial court erred in denying Petitioner's motion for a change of venue; and

(10) Petitioner's trial attorneys failed to object to the admission of videotaped statements showing Petitioner repeatedly requesting an attorney.

Respondent opposes Petitioner's § 2254 motion asserting that all but one of Petitioner's claims has been procedurally defaulted due to her failure to fairly present these claims as federal constitutional issues in state court. Respondent concedes that Petitioner's right to testify claim was fairly presented, but argues that Petitioner was not unconstitutionally deprived of her right to testify by her trial attorneys because she knowingly and voluntarily waived her right to testify. For the reasons stated below, it is recommended that the petition [Docket No. 1] be dismissed with prejudice.

## II. Background

On September 3, 2003, Susan Rae Berkovitz (Petitioner) filed a harassment petition against Shelley Joseph-Kordell, former conservator for Hyman Berkovitz's (father of Petitioner) estate, and Richard Hendrickson, attorney for Joseph-Kordell in a previous conservatorship proceeding concerning Hyman's estate.[1] The court hearing was set for September 29, 2003. Joseph-Kordell and Hendrickson met at the information desk of the Hennepin County

---

[1] Facts compiled from Minnesota Supreme Court decision--State v. Berkovitz, 705 N.W.2d 399 (Minn. 2005).

Government Center at 9:30 a.m. on the 29th.  Michael Frost, an unarmed security guard, escorted Hendrickson and Joseph-Kordell to the 17th floor of the building.

Upon arriving on the 17th floor, Hendrickson noticed that Petitioner was standing in the hallway outside the courtroom.  Hendrickson planned on serving Petitioner with documents related to a pending motion to have the district court declare Petitioner a frivolous litigant and to place further restrictions on her.  As Hendrickson knelt down to get the documents from his briefcase, he heard a crack followed by severe pain in his neck.  Petitioner had shot Hendrickson.  Petitioner then proceeded to the women's restroom and shot Joseph-Kordell four times.  Joseph-Kordell later died at the hospital from multiple injuries caused by the gunshots.  Hendrickson survived the incident, but his left vocal cord was paralyzed.

Minneapolis Police Officer David Shotley found Petitioner in a women's restroom on the other side of the government center.  Officer Shotley asked Petitioner if she was the shooter and Petitioner replied "yes."  Petitioner also stated that she had left the gun in the restroom where Joseph-Kordell was shot.  Officer Shotley escorted Petitioner into the hallway and sat her on a bench.  Petitioner told Officer Shotley, "They have been taking Dad's money for the last three years."  Officer Shotley at this time was only concerned with her identification and told Petitioner that she could talk to an investigator later.

Police then placed Petitioner in a secure room for interrogation.  Petitioner was read her *Miranda* rights and Petitioner refused to talk about the shooting until an attorney was present.  As time passed, however, Petitioner began to openly speak about the shooting.  When Petitioner began talking a police detective reminded her that she had invoked her right to counsel and he was no longer able to talk to her alone.  Petitioner understood this direction, but continued to talk.  Her statements were recorded by a video camera in the room.

3

**III. Procedural Status**

The grand jury returned a two-count indictment against Petitioner for the premeditated first-degree murder of Joseph Kordell and the attempted premeditated first-degree murder of Hendrickson.  Assistant Hennepin County Public Defenders were appointed by the trial court to represent Petitioner.  On May 4, 2004, the jury found Petitioner guilty on both charges.  On May 10, 2004, Petitioner sent the trial court a letter stating that her trial counsel had refused to let her testify.  An evidentiary hearing was held to consider Petitioner's motion for a new trial.  The trial court denied the motion for a new trial, determining that Petitioner was not denied the right to testify.  On June 18, 2004, Petitioner was sentenced to life in prison for the first-degree murder conviction as well as a consecutive 184-month sentence on the attempted first-degree murder conviction.  Petitioner in this matter is currently a state prisoner incarcerated at the Minnesota Correctional Facility in Shakopee, Minnesota.

Petitioner subsequently filed an appeal with the Minnesota Supreme Court.  The Minnesota Office of the State Public Defender (OSPD) represented the Petitioner in this matter. The OSPD raised only the issue of whether Petitioner was deprived of her right to testify at trial by her trial attorneys.[2]  Petitioner also filed a *pro se* supplemental brief alleging various grounds for relief.[3]  The prosecution filed a responsive brief disputing the claims brought forth by the

---

[2] *See generally*  (Appellant's Br., March 16, 2005).

[3] *See generally*  (Appellant's *Pro Se* Supplemental Br., March 22, 2005).  Petitioner claimed: (1) her trial attorneys should have called several witnesses who were traumatized by Richard Hendrickson, one of the shooting victims; (2) a *Miranda* warning was superimposed on a videotape containing several admissions by the petitioner while she was in a secure room at the government center immediately following the shooting; (3) she was not allowed to have an attorney present while in the secure room even after asking police for one to be present "four times"; (4) the videotape should not have been played in "open court" during the pretrial suppression hearing; (5) her motion for change of venue should have been granted; (6) the presiding judge in the trial should have been removed because of the petitioner's previous contact with the judge's wife concerning a probate matter; and (7) the prosecutor failed to turn over certain documents "important" to the petitioner's case. *Id.*

4

OSPD and Petitioner.[4]  In response to the prosecution's brief, Petitioner filed a *pro se* reply brief

addressing some of her earlier claims and added an allegation that testimony in the trial transcript

had been altered.[5]   The Minnesota Supreme Court affirmed Petitioner's convictions on

November 3, 2005.[6]

## IV. Claims

The present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed in

the United States District Court for the District of Minnesota on March 1, 2006.

### A. Petitioner's trial attorneys refused to let her testify.

Before a federal court may reach the merits of a claim in a habeas petition by a state

prisoner, it must first determine whether the prisoner has fairly presented his federal

constitutional claims to the state court. Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887,

888 (1995).  For a claim to be fairly presented "a petitioner is required to refer to a specific

federal constitutional right, a particular constitutional provision, a federal constitutional case, or

a state case raising a pertinent federal constitutional issue." Cox v. Burger, 398 F.3d 1025, 1031

(8th Cir. 2005).  Petitioner "must have informed the state court of both the factual and legal

premises of the claim." Cox v. Lockhart, 970 F.2d 448, 453-54 (8th Cir. 1992).  A claim that is

not fairly presented in state court before raising it in federal court will be procedurally defaulted.

Burger, 398 F.3d at 1031.

The record shows that Petitioner fairly presented the substance of her claim that she did

not knowingly and voluntarily waive her constitutional right to testify.[7]  In Petitioner's appeal

from the denial of state post-conviction relief, the Minnesota Supreme Court listed Petitioner's

---

[4] *See generally* ( Resp't Br., May 3, 2005).
[5] *See generally* (Appellant *Pro Se* Reply Br., June 15, 2005).
[6] Minnesota v. Berkovitz, 705 N.W.2d 399 (Minn. 2005).

claim that "her lawyers had coerced her into not testifying at trial" as one of four separate issues.[8]

### 1. *Knowing and Voluntary Waiver*

28 U.S.C. § 2254 (d) states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[9]

Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right. United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987). A defendant's waiver of this right must be made knowingly and voluntarily. Id. "A knowing and voluntary waiver of the right may be found based on a defendant's silence when…counsel rests without calling [defendant] to testify." Id. at 751-52. Under such circumstances the defendant must act "affirmatively" rather than apparently "acquiesc[ing] in…counsel's advice that [defendant] not testify, and then later claim[ing] that [defendant's] will to testify was overcome." Id.

Petitioner carries the burden of refuting the Minnesota Supreme Court's affirmation of the trial court conviction holding that Petitioner was not denied the right to testify by clear and

---

[7] A criminal defendant has a constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 49, 107 S. Ct. 2704, 2707 (1987). This right is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony. Id. at 51-53, 2704.

[8] Berkovitz, 705 N.W.2d at 400.

[9] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

convincing evidence.[10]  During a hearing on Petitioner's new trial motion to determine whether

she was denied the right to testify, Petitioner testified that she always understood that she had the

right to testify at trial. (Tr. of Proceedings 37:11-38:20, June 8, 2004).  Petitioner acknowledged

a letter sent by her defense counsel at trial on March 29, 2004, expressly stating that she "would

have the right to testify" at trial. (Id. at 32:16-21).  In addition, the trial court explained in detail

her rights with respect to testifying and Petitioner stated that she understood those rights (Trial

Tr. 2188-90).

Petitioner argues that on May 2, 2004, her defense counsel would not allow her to testify

and told her "if we put you on the stand we're going to lose."  Petitioner further asserts that

defense counsel told her that they would not be able to present their closing argument if she

decided to take the stand. At the end of the May 2, 2004, meeting, Petitioner was assured "one

hundred five percent" that they were going to lose if Petitioner decided to testify and Petitioner

subsequently agreed not to testify based on that guarantee.  The next day, Petitioner changed her

mind when advised of her testimonial rights by the trial judge.  Defense counsel requested a

short recess and Petitioner alleges that during the recess defense counsel indicated that "they

were not going to allow (Petitioner) to go on the stand" and that they were "not going to be able

to present final arguments" if they allowed Petitioner to testify.  Petitioner contends that no

response was given and the trial concluded without her testimony.

Nevertheless, defense counsel countered these assertions and the Minnesota Supreme

Court agreed with defense counsel that they always told Petitioner that the decision as to whether

she would testify belonged to her.[11] Defense counsel told Petitioner that they were "one hundred

percent" certain of their advice that she should not testify, but that it was ultimately her decision

---

[10] See Berkovitz, 705 N.W.2d at 408.
[11] See id. at 407.

to make. (Tr. Post-Verdict Evidentiary Hr'g 94:14-15, June 8, 2004). On April 17, 2004, defense

counsel even met with Petitioner to prepare her trial testimony based on her desire to testify.[12]

Following the court recess on May 3, 2004, Petitioner again decided not to testify. (Id. at 52:5-

13). Even Petitioner admitted that there were other occasions during the trial when she

disregarded defense counsel's advice and spoke in court (Id. at 51:23-53:4), but after the recess

she did not tell the trial judge that she wanted to testify. Taking into account Petitioner's

acknowledgement and constant notice by counsel of her constitutional right to testify together

with her silence when counsel rested without calling her to testify, Petitioner's actions constitute

a knowing and voluntary waiver of her right to testify.

### 2. *Legal Advice, Not Coercion*

Coercion exists when the defendant's lawyer uses illegitimate means to prevent the client

from testifying. Lema v. United States, 987 F.2d 48, 53 (1st Cir. 1993); Nichols v. Butler, 953

F.2d 1550, 1553 (11th Cir. 1992). However, legal advice that influences a defendant not to

testify is not coercion. Nichols, 953 F.2d at 1553. Counsel should advise his or her client in the

strongest terms possible if they feel that it would be unwise for the client to testify. Id.

Defense counsel strongly advised Petitioner not to testify because they were concerned

that Petitioner's testimony would "fill in the gaps" necessary for the prosecution to establish

premeditation.[13] Petitioner herself admitted at the April 17th meeting that her testimony

probably would not help her case. (Tr. Post-Conviction Evidentiary Hr'g 122:25). If Petitioner

did not testify, the defense had a glimpse of hope that Petitioner may be convicted of a lesser

---

[12] At the beginning of the case, Petitioner expressed a desire to tell the jury "her side of the story," but hesitated as time passed. See also (Tr. Post-Verdict Evidentiary Hr'g 122:18-21) (testimony by counsel that they engaged in "role playing" with the Petitioner and pretended to be the prosecutor on cross-examination).

[13] To honor Petitioner's desire to testify, defense counsel met with her on April 17, 2004, to prepare her trial testimony. Petitioner's testimonial defense was that the shooting was justified because "she didn't shoot somebody who never did anything to me." Petitioner's lack of remorse would only support premeditation and her attorneys thought it would be in the best interest of Petitioner that she not testify.

charge.

As previously stated, Petitioner contends that her counsel would not allow her to testify and told her that if they put her on the stand that they would lose.  Petitioner also argues that defense counsel told her that they would not be able to present their closing argument if she testified.  Additionally, Petitioner felt that when she asked counsel if they were "a hundred percent sure" that she should not testify that counsel responded with a convincing and coercive, "A hundred five percent sure."  In response, Petitioner "relented" and agree to take counsel's advice.

However, the Minnesota Supreme Court disagreed with Petitioner's assertions.  The court felt that Petitioner's counsel did not improperly pressure her or prevent her from testifying.[14] From the beginning, counsel always told Petitioner that the right to testify was hers to decide. Counsel admitted to telling Petitioner they were one hundred percent certain of their advice that she should not testify, but that it was ultimately her decision to make.  Furthermore, counsel during the recess made a conscious effort to maintain physical distance from Petitioner so that they would not appear to be "domineering over her." (Tr. Post-Verdict Evidentiary Hr'g 104:3-6).

Petitioner was also very strong-willed and unlikely to allow her decisions to be controlled by pressure from her attorneys. See, e.g. Emery v. Johnson, 139 F.3d 191, 199 (5th Cir. 1997)(evidence of petitioner's strong-will considered a factor by the court in denying writ of habeas corpus concerning petitioner's claim of testimonial coercion).  As stated earlier, Petitioner on several occasions during the trial disregarded counsel's advice and spoke in court. Petitioner did not object when defense counsel rested without calling her to testify.  Therefore,

---

[14] Berkovitz, 705 N.W.2d at 406.

the actions and statements of Petitioner's counsel constitute legal advice and fail to rise to a level of coercion.

The Minnesota Supreme Court's decision to deny Petitioner's post-conviction appeal that she was denied the right to testify at trial was not contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The court's decision did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the Minnesota Supreme Court proceeding. In light of Petitioner's unsuccessful attempt to rebut the court's presumption of correctness concerning the right to testify by clear and convincing evidence, this claim fails on the merits.

### B. Petitioner's Unexhausted Claims

#### 1. *Exhaustion*

Generally, a federal court cannot consider the merits of a habeas petition filed by a state prisoner unless the petitioner can exhaust all of the available state court remedies with respect to each of the claims that are presented to the federal court. See 28 U.S.C. §2254(b) & (c). The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law, which means that states have the initial opportunity to address and correct alleged violations of state prisoner's federal rights. Coleman v. Thompson, 501 U.S. 722, 728, 111 S. Ct. 2546, 2555 (1991). A claim is exhausted "when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Krimmel v. Hopkins, 56 F.3d 873, 876 (8th Cir. 1995). Also, a prisoner must proceed through one full round of the state's appellate review process whereby the state's established appellate review process is given one full opportunity to resolve any constitutional issues. O'Sullivan v. Boerchel, 526 U.S.

838, 845, 119 S. Ct. 1728, 1732 (1999).[15]

In Minnesota, "a defendant may appeal as of right from the district court to the Supreme Court [of Minnesota] from a final judgment of conviction of murder in the first degree…[or] from an adverse final order upon a petition for post-conviction relief." MINN. R. CRIM. PRO. 29.02 (2006). Failure to seek review of a claim at the required state appellate levels constitutes non-exhaustion of that claim.

As previously stated, a claim may not go forward under 28 U.S.C. § 2254 if the claim has not been fairly presented. The court will "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." Boerckel, 526 U.S. 848, 119 S. Ct. at 1734. To be fairly presented "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Burger, 398 F.3d at 1031. Petitioner "must have informed the state court of both the factual and legal premises of the claim." Lockhart, 970 F.2d at 453-54.

With respect to Petitioner's remaining claims and the issue of fair presentation of those claims:

(1) Petitioner argued that her trial attorneys refused to excuse the trial judge after learning that the trial judge's wife had previous contact with her before the trial regarding a probate matter. However, this claim was not fairly presented by Petitioner because it fails to refer to a specific federal constitutional right.

(2) Petitioner claimed a *Miranda* warning was "superimposed" on a videotape of Petitioner's statements to the police. Although adequate notification of *Miranda*

---

[15] Note that in circumstances in which a state has a two-tiered appellate review system, comity requires that review be at both appellate levels before the claims may be presented in federal court. Id. at 845, 1732-33.

rights is a specific constitutional right, Petitioner's factual premise is unsupported in the record.[16]

(3) Petitioner stated her trial attorneys failed to present testimony of three other individuals willing to testify on how they were victimized by Richard Hendrickson. Nevertheless, Petitioner failed to inform the state court of the federal or constitutional legal premise underlying this claim.

(4) Petitioner asserted that the prosecutor failed to disclose " extremely important documents" recovered during the execution of a search warrant at her storage locker. While disclosure of documents to the defense by the prosecution is a federal and state right, there is no mention of a specific federal constitutional case concerning this issue. Furthermore, Petitioner's factual premise for this claim is unsupported in the record.

(5) Petitioner claimed her trial attorneys knew about and did not seek to recover the documents the prosecutor failed to disclose. Petitioner's claim, however, was not fairly presented because it addresses no specific constitutional right or issue.

(6) According to Petitioner the trial transcript was altered. This claim lacks any constitutional basis and, in any event, there is no evidence in the record supporting such a claim.

(7) Petitioner also claimed that the trial judge erred in allowing her videotaped statements to be played in "open court" during a pre-trial suppression hearing. This claim by Petitioner also lacks reference to any specific federal constitutional right and is

---

[16] The Minnesota Supreme Court reviewed Petitioner's claim of her denial of *Miranda* rights and held that Petitioner offered no support for that claim and the court could not find any clear and convincing evidence to the contrary in the record. Berkovitz, 705 N.W.2d at 409.

therefore not fairly presented.

(8) Petitioner alleged that the trial court erred in denying her motion for a change of

venue. This claim was never presented as a federal issue.[17]

(9) Finally, Petitioner argued that her trial attorneys failed to object to the admission of

her videotaped statements showing her repeatedly requesting an attorney. Even

though the right to assistance of counsel is specifically provided in the United States

Constitution, Petitioner offers no proof to support the factual assertions of this claim.

Petitioner made no specific reference to any federal constitutional rights concerning the

remaining claims-due process, right to a fair and public trial, privilege against self-incrimination,

right to effective assistance of counsel, or any other specific constitutional right, particular

constitutional provision, federal constitutional case, or state case raising a pertinent federal

constitutional issue. Petitioner poorly informed the state court of the legal premises of her claims

and offered no factual support for the claims.[18] Therefore, Petitioner's remaining claims were

not fairly presented and were not exhausted.

## 2. *Procedural Default*

When a petitioner has failed to fairly present federal claims in state court, the federal

court must determine whether the state procedural rules would allow hearing the claims on the

merits in a subsequent state court proceeding. McCall v. Benson, 114 F.3d 754, 757 (8th Cir.

1997). If state procedural rules preclude hearing petitioner's claims on the merits, the petitioner

has procedurally defaulted unless the petitioner is able to demonstrate either cause for her default

---

[17] With respect to Petitioner's claim of change of venue, the court disposed of this claim under state law and held that Petitioner offered no evidence suggesting that the pre-trial publicity of her case affected the jurors or that the denial of her change of venue resulted in actual prejudice. Id.

[18] The Minnesota Supreme Court condensed the remaining claims from Petitioner's *pro se* briefs and assumed that Petitioner was arguing ineffective assistance of counsel. Id. Nevertheless, Petitioner, again, failed to present any evidence to support her "ineffective counsel" claim and after a review of the record the court held that performance of Petitioner's counsel did not fall below an objective standard of reasonableness. Id.

and actual prejudice or that the failure to consider were claims would result in a fundamental miscarriage of justice. Id.

Under Minnesota law, once a direct appeal has been taken, all claims that were raised on direct appeal and all claims that were known or should have been known but were not raised will not be considered up a subsequent petition for post-conviction relief. White v. State, 711 N.W.2d 106, 109 (2006)(citing Hanley v. State, 534 N.W.2d 277, 279 (Minn. 1995); State v. Knaffla, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)). Petitioner's unexhausted claims were raised on appeal to the Minnesota Supreme Court.[19] However, Minnesota law precludes further court review of those claims on post-conviction petition in the state courts. Id. Since Petitioner has already completed her state appeal and all of Petitioner's unexhausted claims could have been raised as federal issues on that appeal, Petitioner is barred from subsequently raising these claims on petition for post-conviction relief.[20]

### a. *Cause & Prejudice/Fundamental Miscarriage of Justice*

Once a claim has procedurally defaulted this Court cannot review the claim on the merits unless the petitioner is able to demonstrate either cause for default and actual prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. McCall, 114 F.3d at 758. "To demonstrate prejudice, a petitioner must show that the errors of which he complains worked to his *actual* and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions." Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995). Petitioner has failed to carry the burden of showing the cause and prejudice required to avoid procedural default and subsequent dismissal of her remaining claims.

The fundamental miscarriage of justice exemption is only available to a petitioner who

---

[19] See Appellant's *Pro Se* Supplemental & Reply Br.
[20] See 28 U.S.C. § 2254(b)(1)(A).

demonstrates "that a constitutional violation has probably resulted in the conviction of one who is actually innocent." McCall, 114 F.3d at 758.  Petitioner fails to allege any constitutional violation that would have overturned her conviction.  Petitioner has not even attempted to show that she was actually innocent.  From the beginning, Petitioner admitted that she was the shooter.[21]  Petitioner also contacted Channel 5 news on the eve of the trial and admitted that she was the shooter. (Tr. Post-Verdict Evidentiary Hr'g 152:21-23).  Since Petitioner has procedurally defaulted on her unexhausted claims and therefore has no further opportunity to exhaust those claims in state court, dismissal of this action to permit full exhaustion is not required.

## C. Merits of Unexhausted Claims

Although each of the remaining claims were not fairly presented by the Petitioner and are procedurally defaulted, the Court will briefly address the substance of each of Petitioner's remaining claims.

### 1.  *Trial Counsel's Refusal to Move for Recusal of Trial Judge*

#### a.  *Due Process-Right to Fair Trial*

Petitioner's claim that defense counsel refused to move for the trial judge's recusal was not fairly presented as a specific federal constitutional issue and there is no evidence of cause and actual prejudice to override procedural default of this claim.  Petitioner also fails to demonstrate that the failure to consider this claim would result in a fundamental miscarriage of justice.

If this claim was fairly presented it could be analyzed under the constitutional right to due

---

[21] Berkovitz, 705 N.W.2d at 402-03.  Officer Shotley asked Petitioner if she was the shooter, and Petitioner responded "yes." Id.  Petitioner's "defense" was that the victims "had it coming." (Tr. of Sentencing Hr'g 69). Petitioner expressed absolutely no remorse for her conduct. (Id. at 46).

process.  "It is true that a fair trial before a fair tribunal is a basic requirement of due process."

Dyas v. Lockhart, 705 F.2d 993, 995 (1983).  The right to a fair trial requires that the trial judge

be "neutral, detached, and free from actual bias."  Id.  If the petitioner knew of the judge's

disqualification offer and declined to accept it, then defendant "cannot now be heard to claim

that he was denied due process" by the trial judge.  Id. (citing Johnson v. United States, 318 U.S.

189, 201, 63 S. Ct. 549, 555 (1943)).  However, even if the habeas petitioner knew about the

judge's disqualification offer and decided not to waive his/her recusal right, the petitioner

alleging a violation of his/her due process-fair trial rights must demonstrate that the judge was

actually biased or prejudiced against him/her. Id. at 996.

The trial judge held a hearing to inform the parties of the contact between Petitioner and

the judge's wife regarding a previous probate matter. (Hr'g Tr. 1, December 3, 2003).  The judge

wanted to give both sides an opportunity to object if they believed that such an objection was

necessary.  Both parties, including Petitioner, were present at the hearing and neither side moved

for recusal of the trial judge.  Based on Petitioner's waiver of the judge's disqualification offer,

Petitioner should not be allowed to claim that her due process rights were violated based on

judicial bias.  Petitioner has also failed to offer any proof of actual bias or prejudice by the trial

judge.[22]  Moreover, the contact between the trial judge's wife and Petitioner

would not constitute a basis for disqualification under federal or state law.  See 28 U.S.C. §

455(a) (2006); MINN. CODE OF JUD. CONDUCT, CANON 3(D) (2006).

### b. *Ineffective Assistance of Counsel*

The due process claim could also be analyzed as a claim for ineffective assistance of

---

[22] Petitioner states, "Judge Anderson's wife is a probate lawyer, he could have envisioned his wife instead of attorney Hendrickson present during the incident and have a bias to send a message that no will come after a probate lawyer." (Pet'r *Pro Se* Supplemental Br. 4, March 22, 2005).

counsel.[23]  The Supreme Court set forth a two-step analysis to evaluate a claim of ineffective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, appellant "must show that counsel's performance was deficient", in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 2064.  The standard of conduct is that of a reasonably competent attorney. Id.  To comply with this requirement, appellant (i.e. petitioner) must prove that her counsel's assistance fell below an objective standard of reasonableness, considering all of the circumstances faced by the attorney at the time in question. Id. at 687-88, 2065. Accordingly, petitioner must overcome a "strong presumption" that her counsel's actions constituted reasonable trial strategy under the circumstances. Id. at 689, 2065.  Second, petitioner must show that she was prejudiced by her counsel's ineffectiveness or that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 2068-69.

The Court holds that Petitioner failed to show that trial counsel's performance was deficient.  Petitioner was present at the hearing addressing Petitioner's contact with the trial judge's wife and understood the trial judge's offer of disqualification.  Petitioner never motioned for a recusal of the trial judge.  Therefore, trial counsel's decision not to move for the trial judge's recusal is nothing more than reasonable trial strategy.  Petitioner failed to provide any evidence to rebut this "strong presumption."   Petitioner also offered no evidence or proof to show that she was prejudiced by trial counsel's ineffectiveness or that there was a reasonable probability that absent trial counsel's error in not moving to recuse the judge that such error would have caused reasonable doubt in the minds of the jury concerning Petitioner's guilt.

---

[23] Petitioner in her petition for writ of habeas corpus mentions the words "ineffective counsel" next to this claim. (See Appellant's Pet. 5, March 1, 2006).

17

### 2. *"Superimposed" Miranda Rights on Videotape*

As previously stated, Petitioner's claim that her *Miranda* rights were "superimposed" on the videotape recorded after the shooting was not fairly presented as a constitutional issue and thereby procedurally defaulted.  On the merits, Petitioner's claim that her *Miranda* rights were superimposed on videotape may be considered a violation of due process or right against self-incrimination.  As previously stated, under 28 U.S.C. § 2254(e)(1), "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The Minnesota Supreme Court held that Petitioner offered no support for this claim and there was no evidence in the record to the contrary.[24]  With respect to Petitioner's application for writ of habeas corpus, Petitioner failed to offer any clear and convincing evidence to rebut the Minnesota Supreme Court's presumption of correctness.  Therefore, this claim should be rejected on the merits.

### 3. *Trial Counsel's Failure to Call Certain Witnesses*

#### a. *Stating Claims of Relief with Particularized Facts*

Petitioner's claim that defense counsel failed to offer the testimony of three witnesses was not addressed as a specific federal constitutional issue and was thereby not fairly presented.  There is also no evidence of cause and actual prejudice or fundamental miscarriage of justice to refute procedural default of this claim.  If this claim were analyzed on the merits, in order to substantially comply with Section 2254 Rule 2(c), a petitioner "must state specific, particularized

---

[24] Berkovitz, 705 N.W.2d at 408.  The court states, "Review of the video makes clear that Berkovitz was advised of her rights and, in fact, invoked them only to later spontaneously volunteer information about the shooting.  Indeed, a police detective can be seen on the video reminding Berkovitz that he could not talk to her about the shooting because she had invoked her right to counsel." Id.

facts which entitle him or her to habeas corpus relief for each ground specified.  These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review."  <u>Adams v. Armontrout</u>, 897 F.2d 332, 334 (8th Cir. 1990).  Petitioner's claim that her trial counsel failed to present witness testimony of three individuals "traumatized" by Richard Hendrickson lacks specificity and particularized facts necessary to enable the Court to make a determination on the merits.  Petitioner makes no mention of the identities of the witnesses who were willing to testify.  In addition, Petitioner offers no details concerning the testimony of the potential witnesses other than the fact that these witnesses had traumatizing experiences with Mr. Hendrickson.  Therefore, Petitioner's claim should be denied further habeas review by the Court on the merits.

### b.  *Ineffective Assistance of Counsel*

This claim may be addressed as a claim for ineffective assistance of counsel subject to analysis under the <u>Strickland</u> test.[25]  However, Petitioner fails to offer any proof that she was prejudiced by her counsel's ineffectiveness or that the jury would have had a reasonable doubt respecting guilt, absent defense counsel's alleged error in not offering the testimony of the three witnesses.  There is also no evidence or support presented by Petitioner that her counsel's assistance fell below an objective standard of reasonableness.

As stated earlier, the petitioner must overcome a strong presumption that her trial counsel's actions constituted reasonable trial strategy under the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. 689, 104 S. Ct. at 2065.  Decisions relating to witness selection are normally left to counsel's judgment and this will not be second-guessed by hindsight. <u>Williams v. Armontrout</u>, 912 F.2d 924, 934 (8th Cir.1990).

---

[25] <u>See</u> *supra* Part C(1)(b).

Trial counsel's decision not to offer the testimony of the three "traumatized" witnesses is properly characterized as trial strategy. The potential testimony of the three witnesses supported Petitioner's justification defense for shooting Mr. Hendrickson. However, this justification defense would not help to lessen the first-degree murder charge to heat of passion manslaughter.[26] Anger alone is not sufficient for heat of passion.[27] Defendant's emotional state alone will not mitigate murder to manslaughter.[28] Past acts of the victim cannot justify a "heat of passion" instruction.[29] Furthermore, disputes over business transactions do not provide sufficient provocation to mitigate a defendant's actions.[30]

Petitioner's anger alone over the control of her parents' estate would fail to provide a sufficient basis for a "heat of passion" defense. The lawsuit over the estate of Petitioner's parents was settled two years before the shooting of Ms. Kordell-Joseph and Mr. Hendrickson. Presumably, the interactions between Mr. Hendrickson and the three potential witnesses were also before the shooting. Based on these facts, the proffered testimony of the three witnesses would seem to be irrelevant and harmful to Petitioner's "heat of passion" defense. Therefore, trial counsel's decision not to offer the testimony can only be seen as a reasonable act of trial strategy.

### 4. *Prosecution's Failure to Disclose "Extremely Important Documents"*

As already mentioned, Petitioner's claim that the prosecution failed to disclose "extremely important documents" was not fairly presented because it fails to mention a specific constitutional issue or federal right. This claim has also procedurally defaulted because there is

---

[26] A defendant is guilty of heat of passion manslaughter if the (1) killing was committed in the heart of passion, and (2) passion was provoked by such words or acts of another as would provoke a person of ordinary self-control under the circumstances. State v. Quick, 659 N.W.2d 701 711 (Minn. 2003).
[27] Id.
[28] State v. Cuypers, 481 N.W.2d 553, 557 (Minn. 1992).
[29] Id.
[30] State v. Peou, 579 N.W.2d 471, 476 (Minn.1998).

no evidence of cause for default and actual prejudice or fundamental miscarriage of justice. This claim could arguably be analyzed as a due process violation based on <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963). The Supreme Court states that, "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Id.</u> at 87, 1196-1197. The Court went one step further in <u>Kyles v. Whitley</u> and stated the accused does not need to specifically request the material information. 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565 (1995). This rule applies to both exculpatory and impeachment evidence. <u>United States v. Bagley</u>, 473 U.S. 667, 676, 105 S. Ct. 3375, 3381 (1985). Favorable evidence is material and "constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Kyles</u>, 514 U.S. 433, 115 S. Ct. at 1565.

Nonetheless, Petitioner fails to identify the type or content of any documents that were alleged to have been withheld. Petitioner offers no support that the disclosure of these "extremely important documents" would have shown reasonable probability that the result of the proceeding would have been different. Petitioner was unsuccessful in stating specific, particularized facts regarding this claim and therefore should be denied further habeas corpus review by this Court. <u>See</u> <u>Adams</u>, 897 F.3d at 334.

### 5. *Trial Counsel's Inability to Obtain "Extremely Important Documents"*

#### a. *Stating Claims of Relief with Particularized Facts*

Petitioner's claim that her counsel failed to obtain the "extremely important documents" held by the prosecution was not fairly presented because it addresses no specific constitutional right. This claim is therefore procedurally defaulted. With respect to the substance, Petitioner's

claim that trial counsel failed to obtain "extremely important documents" from the prosecution lacks specificity and particularized facts necessary for the Court to make a determination on the merits. See Adams, 897, F.3d at 334. Petitioner offered no facts identifying the type or content of any "extremely important documents" the defense failed to obtain. Thus, Petitioner's claim should be denied further habeas review by the Court on the merits.

### b.   *Ineffective Assistance of Counsel*

This claim may also be addressed as a claim for ineffective assistance of counsel subject to analysis under the Strickland test.[31] Petitioner's application for habeas corpus review states "ineffective counsel" next to this claim. However, Petitioner offered no evidence to support a claim that she was prejudiced by her counsel's ineffectiveness or that the jury would have had a reasonable doubt respecting guilt, absent defense counsel's alleged error in not obtaining the alleged "extremely important documents". There is also no evidence presented by Petitioner that her counsel's assistance fell below an objective standard of reasonableness. In fact, after discovery was completed, Petitioner's counsel made a specific demand, at Petitioner's request, for any additional documents held by the prosecution. (Pretrial Hr'g Tr. 248, March 12, 2004).

### 6.   *Alteration of Trial Transcript*

Petitioner's claim that the trial transcript was altered was not fairly presented because it lacks any constitutional basis. Absent any evidence by Petitioner showing cause and actual prejudice or fundamental miscarriage of justice, this claim also has procedurally defaulted. With respect to the substance of the claim, mere conclusory allegations by a habeas petitioner will not suffice. Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8thCir. 1987). The potential legal premise for this claim would be a violation of due process. Petitioner's claim concerning the alteration of

---

[31] See *supra* Part C(1)(b).

the trial transcript is a mere conclusory allegation.  There is no support in the record to support such a claim.  Petitioner fails to identify with specificity and particularized facts which parts of the trial transcript were altered.  Petitioner also makes no mention of how or who altered the transcript.  Therefore, based on <u>Wiggins</u> and <u>Adams</u>, this claim warrants no further review by the Court.

### 7. *Motion for Change of Venue Denied*

As previously stated, Petitioner's claim that the trial court erred in denying the change of venue claim was not fairly presented as a specific federal issue and has subsequently defaulted due to Petitioner's failure to offer any evidence of cause and prejudice or fundamental injustice. Petitioner's trial attorneys filed a motion for change of venue on February 2, 2004, claiming that excessive pretrial media coverage made it impossible for Petitioner to receive a fair trial in Hennepin County.  The trial court denied this motion on February 9, 2004.  The trial court also indicated that it would reconsider its denial should finding an impartial jury prove difficult during jury selection.[32]

The most applicable legal premise for Petitioner's claim of denial of change of venue is a due process violation.  The Due Process Clause of the Fourteenth Amendment guarantees the Sixth Amendment right of a jury trial in state criminal prosecutions.  <u>Pruett v. Norris</u>, 153 F.3d 579, 584 (8th Cir. 1998).  This right includes the right to trial by an impartial jury. <u>Id.</u>

A habeas petitioner may attempt to prove that pretrial publicity was so extensive and corrupting that a reviewing court is required to "presume unfairness of constitutional magnitude." <u>Id.</u>  In order to prove inherent prejudice a habeas petitioner must satisfy a high threshold of proof. <u>Id.</u>  However, an individual's expectations of privacy and media restraint are

---

[32] Tr. on Appeal 18.

lessened when he has resolved to invite the very attention and generate the very publicity of which he later complains. Id.

Petitioner invited much of the trial publicity. As previously mentioned, Petitioner contacted a local television state approximately one week before jury selection and confessed to the shootings. Petitioner failed to offer any evidence to establish a presumption of prejudice.

The second tier of analysis requires a petitioner to demonstrate actual prejudice as a condition of receiving habeas relief. Id. at 587. In making this assessment, a court looks to "indications in the totality of circumstances" to determine if any inference of juror partiality rendered the trial fundamentally unfair. Id. Specifically, when a petitioner alleges an improper denial of a motion to change venue, the court conducts an independent evaluation of the *voir dire* testimony of the impaneled jurors. Id. The Constitution does not require jurors to be ignorant of the facts and issues involved in a case. Id. Rather, the relevant question is whether the jurors actually seated "had such fixed opinions that they could not judge impartially the guilt of the defendant." Id. Impartiality is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. Id.

Petitioner has also failed to offer any evidence that the jury was not impartial.[33] The parties questioned sixty potential jurors in this case. Twenty-four jurors were struck for cause. Many of those jurors were stricken based on opinions formed from the pretrial media coverage.[34] Of the fourteen jurors selected (two jurors were alternates), two jurors possessed no recollection of Petitioner's crimes or the media coverage surrounding her crimes.[35] One juror thought the

---

[33] If the trial jury was impartial, the trial court's decision not to grant a change of venue motion is not error. United States v. Blom, 242 F.3d 799, 804-05 (8th Cir. 2001).
[34] *See* Tr. on Appeal 216-217, 362-63, 391-395.
[35] Id. at 798-99, 929.

shooter in this case was a man.[36]  The remaining jurors recalled scattered facts surrounding

Petitioner's alleged actions.[37]  Nevertheless, all fourteen jurors indicated that they could set aside

any information they may have learned from press coverage and base their decision on the

evidence presented at trial.[38]

The Minnesota Supreme Court also addressed the trial court's denial of Petitioner's

motion for change of venue.  Basing its ruling on Minnesota law, the court stated that Petitioner

offered "no evidence suggesting that the pretrial publicity surrounding her case affected any of

the jurors who sat on her case or that the denial of her change in venue motion resulted in actual

prejudice to her."[39]  Petitioner has failed to offer clear and convincing evidence to counter the

Minnesota Supreme Court's holding on the venue issue.  See 28 U.S.C. § 2254(e)(1) (2006).

Considering the impartial jury and Petitioner's failure to rebut the courts "presumption of

correctness" this claim should be denied on the merits.

### 8.   Trial Judge Erred in Allowing Videotaped Statements in "Open Court"

Petitioner's claim that the trial judge erred in allowing her videotaped statements to be

played in "open court" during a pre-trial suppression hearing lacks reference to any specific

federal constitutional right.  Hence, this claim was not fairly presented.  Petitioner's claim is also

procedurally defaulted.

Petitioner claims that, "Tape played in open court prior to court deciding as to whether

tape will be admissible.  Reporters were somewhat biased in reporting [the] tape to prejudice

potential jur[ors]."[40]  However, Petitioner fails to provide any specific evidence suggesting that

---

[36] Id. at 824.
[37] Id. at 72, 222, 306, 401, 481, 1039-43, 1085, 1356, 1379, 1399.
[38] Id. at 73, 223, 307, 402, 483-84, 755-56, 801, 826-27, 1048-49, 1087, 1358, 1381, 1400.
[39] Berkovitz, 705 N.W.2d at 408.
[40] See Appellant's Pro Se Supplemental Brief 3.

allowing reporters and others in the courtroom during the preliminary hearing was prejudicial, thereby denying her right to a fair trial.  As an alternative to closure, the court conducted jury *voir dire* regarding media coverage and possible jury exposure to publicity.  As mentioned, all fourteen jurors selected for trial indicated that they could set aside any information they may have acquired from the media and would base their decision solely on the evidence offered.  The Minnesota Supreme Court also agreed that there was no evidence suggesting the pretrial publicity affected any of the jurors.[41]  There is also no evidence in the record that suggests the jurors knew of the suppression hearing and the incriminating statements made by Petitioner in the videotape.  Therefore, this claim by Petitioner should also fall on the merits.

### 9.  Trial Counsel's Failure to Object to Petitioner's Videotaped Statements

Finally, Petitioner's factual premise that defense counsel failed to object to Petitioner's videotaped statements lacks truth.  This claim was not fairly presented as a specific constitutional right and has procedurally defaulted because Petitioner makes no showing of cause for her default and actual prejudice or that failure to consider this claim would result in a fundamental miscarriage of justice.

On the merits, Petitioner's legal premise is best characterized as ineffective assistance of counsel and a violation of her Fifth Amendment right to counsel.  However, the Court believes it is unnecessary to analyze this claim under <u>Strickland</u> because Petitioner's claim is incorrect. Petitioner's trial attorneys moved to suppress her videotaped statement both in writing and at the preliminary suppression hearing on January 26, 2004.  The trial judge denied defense counsel's motion to suppress on March 22, 2004.  Petitioner was escorted to the Grain Exchange Building where she was given her *Miranda* rights and invoked her right to a lawyer. (Mem. & Order

---

[41] <u>Berkovitz</u>, 705 N.W.2d at 408.

Concerning Def.'s Mot. to Suppress Her Statement to Police 3, March 22, 2004).  Petitioner

states that no attorney was provided when Deputy Chesmar asked her what shelter she was in.

This question was asked after Petitioner's *Miranda* rights were given.  However, the trial court

correctly suppressed Petitioner's answer to that question. (<u>Id.</u>)  Subsequently, Petitioner began to

voluntarily discuss the shootings, despite the detective cutting her off and reminding her that she

invoked her right to counsel and that he could not talk to her. (<u>Id.</u> at 4).  Furthermore, Petitioner's

volunteered remarks were not the product of police interrogation. [42]  Thus, Petitioner is not

entitled to habeas relief on the merits as to this claim.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceeding herein, **IT IS HEREBY**

**RECOMMENDED** that the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody [Docket No. 1] be **dismissed with prejudice.**


DATED:   __July 17, 2006___


_s/Arthur J. Boylan_____
Arthur J. Boylan
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and
Recommendation by filing with the Clerk of Court and by serving upon all parties written
objections that specifically identify the portions of the Report to which objections are made and
the basis of each objection.  This Report and Recommendation does not constitute an order or
judgment from the District Court and it is therefore not directly appealable to the Circuit Court of
Appeals.  Written objections must be filed with the Court before August 2, 2006.

---

[42] <u>See, e.g.</u> <u>United States v. Lockett</u>, 393 F.3d 834, 837 (2005)  "Volunteered statements of any kind are not barred
by the Fifth Amendment [and] *Miranda* concerns do not arise in the absence of police interrogation." <u>Id.</u>
Interrogation does not generally include "routine processing-type questions" such as the name and address of a
suspect. <u>Id.</u>